UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANNIE SALAZAR,

    Plaintiff,

v.                                      CASE No. 8:08-CV-1030-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

## ORDER

The plaintiff in this case seeks judicial review of the denial of her claim for supplemental security income payments.[1] Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain any reversible error, the decision will be affirmed.

### I.

The plaintiff, who was forty years old at the time of the administrative hearing and who has an eleventh grade education (Tr. 185, 557), has no relevant past work experience (Tr. 571-72). The plaintiff filed

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 18).

her present claim for supplemental security income payments, alleging that she became disabled due to arthritis of the spine, chronic obstructive pulmonary disease, and sciatic nerve damage (Tr. 84). She alleges a disability onset date of October 8, 2003, in light of an adverse decision by an administrative law judge on October 7, 2003, on a prior claim for supplemental security income payments. The current claim was denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before a different law judge. The law judge found that the plaintiff had severe impairments of "obesity with history of degenerative disk disease (DDD) of the lumbar spine and chronic obstructive pulmonary disease (COPD) related to smoking cigarettes" (Tr. 28). The law judge concluded that these impairments limited the plaintiff to light work with occasional balancing, stooping, crouching, kneeling, crawling, and climbing stairs, but not long vertical ladders, scaffolds, or ropes (Tr. 32). The law judge further restricted the plaintiff from working at unprotected heights or in poorly ventilated areas, with the additional limitation that she avoid noxious fumes and gases (id.). The law judge concluded, based upon the testimony of a

vocational expert, that the plaintiff could perform work that exists in significant numbers in the national economy, such as office helper, cashier II, and customer security clerk (Tr. 45). The law judge therefore decided that the plaintiff was not disabled (Tr. 46). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

II.

A. In order to be entitled to supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient

evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

B. The Commissioner's regulations set out what is termed a "sequential" analysis for deciding disability claims. See 20 C.F.R. 416.920. One of the threshold inquiries (step two) is whether a claimant has a severe impairment. 20 C.F.R. 416.920(c). An impairment is not severe if it does not significantly limit a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. 416.921(a). If an impairment is not severe, then a claimant is deemed to be not disabled. 20 C.F.R. 416.920(c).

When an impairment is severe, but does not meet, or equal, an Appendix 1 listing (step three), a further inquiry (step four) is made as to whether the impairment prevents the claimant from doing past relevant work. 20 C.F.R. 416.920(f). If a claimant cannot do such work, an additional determination (step five) is made concerning whether the claimant can perform other work which exists in substantial numbers in the national economy. 20 C.F.R. 416.920(g).

III.

The plaintiff alleges that she is disabled due to a number of impairments. The law judge evaluated those allegations in a lengthy and detailed decision. The law judge found that the plaintiff had severe impairments of obesity with a history of degenerative disc disease of the lumbar spine, and chronic obstructive pulmonary disease related to smoking cigarettes (Tr. 28). The law judge determined that the plaintiff's impairments limited her to a range of light work, but did not render her disabled (Tr. 32). The plaintiff challenges the law judge's decision only with respect to his assessment of the plaintiff's allegations regarding her hands.

The law judge found that the plaintiff's hand problem was a nonsevere impairment (Tr. 28). The law judge considered the plaintiff's alleged hand impairment along with allegations of shoulder and arm problems (Tr. 29). The law judge stated (id.):

> These alleged impairments and limitations are inconsistent with the medical evidence of record. Records show the claimant underwent closed reduction for left wrist fracture on July 13, 2001. Since that date, the claimant has not sought medical treatment for alleged neck, shoulder, arm or hand pain or limitation of function from any

> doctor. She alleged that she cannot get needed medical treatment due to lack of insurance, but records show that she has obtained medical treatment for her other alleged impairments.
>
> No treating or consulting doctor noted evidence of such alleged impairments until Dr. [H.C.] Nelson consultatively examined her on November 10, 2003. At that exam, the claimant told Dr. Nelson that she had frequent pain in her shoulders and neck, and her shoulder pain radiated into her arms. She stated she had a history of left wrist fracture and she could not lift a frying pan with her left arm. She did not allege difficulty lifting or otherwise using her right arm or hand. Dr. Nelson found the claimant had limited range of motion in the cervical spine and shoulders, but motor strength was normal in the upper extremities. He found the claimant had difficulty holding objects in the left hand and picking up small objects from a flat surface with the right hand. Right hand grip strength was 3/5 and left hand was 4/5. He diagnosed probable post traumatic arthritis of the cervical spine and probable degenerative arthritis of the shoulders. Dr. Nelson opined the claimant could occasionally lift 25 pounds and frequently 10 pounds.

The law judge then set forth certain of the plaintiff's daily activities (id.). He concluded that "[t]hese daily activities are inconsistent with her alleged pain and limitation of function in her neck, shoulders and upper extremities" (id.).

The law judge pointed out further (id.):

> Dr. Nelson consultatively examined the claimant again on August 16, 2004[,] when she alleged that her impairments had worsened since the previous exam. She complained of daily pain in her chest, neck, shoulders and arms. However, at this time, Dr. Nelson found the claimant's motor strength, grip strength and fine manipulation were unimpaired in the upper extremities. He diagnosed probable degenerative arthritis of the cervical spine and wrists even though he noted she had no abnormality of her joints.

The law judge next noted that medical records from emergency rooms, hospital admissions, clinics, and treating doctors did not reflect complaints by the plaintiff regarding pain or limitation of function in her upper extremities (Tr. 30).

> The law judge concluded (id.):
>
> The claimant testified at the hearing that she could not work in part because her right hand "goes out." When asked to make a fist with both hands, the claimant placed the fingers of both hands in a claw-like position and stated she was unable to close her hands into a fist. However, the claimant was observed using a walker at hearing. She clutched both hands firmly around the handles of the walker while ambulating. I find the claimant's allegations of pain and limitation of function of her hands are not credible and are inconsistent with the medical evidence of record and the use of her hands at the hearing.

The plaintiff's primary contention is that the law judge "erred by failing to find that the plaintiff's hand impairments constitute severe impairments" (Doc. 25, p. 6). The regulations define a nonsevere impairment as one that "does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. 416.921(a). The plaintiff points out that the court of appeals has stated that "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). Notably, the law judge acknowledged this principle in his decision (Tr. 27). Regardless of the alternate formulation, the standard set out in the regulation, and the one I will apply, is that a nonsevere impairment does not significantly limit a claimant's ability to do work activities. See Dixon v. Barnhart, 151 Fed.Appx. 810, 812 (11th Cir. 2005)(unpub. dec.) (the claimant "did not have a severe impairment because he was not significantly limited by a physical or mental impairment").

The reasons set forth by the law judge adequately support his finding that the plaintiff does not have a significant hand impairment. In particular, no treating or examining doctor, including Dr. Nelson, has opined that the plaintiff has manipulative limitations. Moreover, the record does not reflect that the plaintiff has complained about hand problems to any treating health care provider since the alleged onset date.[2]

The plaintiff challenges the finding of a nonsevere impairment on the ground that "there is clinical evidence in the record that the Plaintiff has some limitations with respect to her ability to handle and grasp" (Doc. 25, p. 8). As previously indicated, however, under the substantial evidence test, that is not enough to justify a reversal; rather, the evidence must compel a reversal. Adefemi v. Ashcroft, supra, 386 F.3d at 1027. While the plaintiff quibbles with the nonsevere finding, the evidence does not compel a contrary conclusion.

The plaintiff points primarily to consulting physician Dr. H.C. Nelson, who found on November 10, 2003, that the plaintiff's grip strength

---

[2] It is noted that medical records indicate during reviews of systems that the plaintiff's upper extremities were found to be within normal limits (Tr. 346, 530, 550).

was 3/5 in her right hand and 4/5 in her left hand, and that she had difficulty holding objects in her left hand and picking up small objects from a flat surface with her right hand (Tr. 186). Significantly, although Dr. Nelson opined functional limitations that were favorable to the plaintiff (and which were given little weight by the law judge because they were inconsistent with findings by treating sources (Tr. 41)), he did not state any functional limitation related to the plaintiff's hands (see Tr. 187).

In any event, Dr. Nelson's findings regarding grip strength and handling were negated by Dr. Nelson's findings at another consultative examination nine months later. At that time, he found that "[g]rip strength and fine manipulation are not impaired" (Tr. 221). Accordingly, Dr. Nelson (again) did not assess any functional limitations with respect to the plaintiff's hands.

Under these circumstances, Dr. Nelson's findings are not only consistent with, but support, the law judge's findings that the plaintiff's hand

condition is not a significant impairment. His evidence certainly does not compel a finding that the plaintiff has a severe hand impairment.³

The plaintiff also asserts that the law judge should have ordered a consultative examination. In this respect, she asserts that there was no discussion about the plaintiff's hand, or wrist, problem for several years prior to the October 2006 hearing so that "there is a reasonable probability that the plaintiff's wrists and hands became more problematic" (Doc. 25, p. 9). No there isn't. The reason there was no discussion about her wrists and hands is because she did not complain about them. Accordingly, the request for another consultative examination is based upon gross, and unwarranted, speculation. The request is also unjustified because (1) the plaintiff has the burden to show disability at step two, Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003); (2) the plaintiff's representative did not request another consultative examination from the law judge, so that this current contention

---

³At the end of the plaintiff's argument on this point, the plaintiff throws in references to her wrists, as well as her hands (Doc. 25, p. 9). As the Commissioner correctly notes (Doc. 26, p. 5 n. 4), the same evidence essentially supports a finding that the plaintiff did not have a severe wrist impairment. Thus, the law judge's discussion addressed the plaintiff's upper extremities.

smacks of sandbagging; and (3) the plaintiff has already received three consultative examinations in connection with this claim.

The plaintiff contends that the law judge erred in considering his personal observations of the plaintiff's use and grip on a walker at the hearing. She says that her ability at the hearing to grip and use a walker (that she borrowed from a friend) "is of no probative value" (Doc. 25, pp. 9-10; Tr. 562). The law judge, of course, is not prohibited "from considering the claimant's appearance and demeanor during the hearing," as long as he does "not reject the objective medical evidence and claimant's testimony solely upon his observation during the hearing." Norris v. Heckler, 760 F.2d 1154, 1158 (11th Cir. 1985).

The law judge's observations of the plaintiff at the hearing directly relate to his determination that her allegation that she is unable to grasp is not credible. Thus, he states (Tr. 30):

> When asked to make a fist with both hands, the claimant placed the fingers of both hands in a claw-like position and stated she was unable to close her hands into a fist. However, the claimant was observed using a walker at the hearing. She clutched both hands firmly around the handles of the walker while ambulating.

As the Commissioner notes, the law judge's observation undermined the plaintiff's testimony that she was unable to make a fist (Doc. 26, p. 6 n. 5).

The plaintiff has raised as a second, and distinct, issue that the law judge failed to include any limitations regarding handling in his questions to the vocational expert (Doc. 25, pp. 10-11). In light of the conclusion that the plaintiff did not have a severe hand impairment, this argument is meritless. Thus, the law judge is not required to include in the hypothetical question allegations that have been properly rejected. <u>Crawford</u> v. <u>Commissioner of Social Security</u>, 363 F.3d 1155, 1161 (11th Cir. 2004).

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby AFFIRMED. The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 15th day of August, 2009.

/s/ Thomas G. Wilson
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE